Kelly H. Andersen (ISB#10511)
David W. Gadd (ISB #7605)
STOVER, GADD & ASSOCIATES, PLLC
905 Shoshone Street North
P.O. Box 1428
Twin Falls, Idaho 83303-1428
Telephone: (208) 736-9900
Facsimile: (208) 736-9929
kha@magicvalleylaw.com
dwg@magicvalleylaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OTTIS D. PHERIGO, an individual<br><br>         Plaintiff,<br><br>v.<br><br>CITY OF BURLEY, an Idaho municipal corporation<br><br>         Defendant. | Case No. 4:21-cv-364<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**42 U.S.C. § 2000e**<br>**42 U.S.C. § 12101**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW the plaintiff, Ottis D. Pherigo, by and through his undersigned counsel, the firm STOVER, GADD & ASSOCIATES, PLLC, and for a cause of action against the above-named defendant, complains and alleges as follows:

**I.
PARTIES, VENUE, JURISDICTION**

1.     Ottis D. Pherigo ("Pherigo") is an individual residing in Burley, Idaho.

2.     City of Burley ("City") is an Idaho municipal corporation located in Cassia County, Idaho.

3.     Venue is proper in this court under 28 U.S. Code § 1391.

**COMPLAINT AND DEMAND FOR JURY TRIAL– Page 1**

4. Jurisdiction is proper under 28 U.S. Code § 1331 as a civil action arising under the laws of the United States.

## II.
## FACTUAL ALLEGATIONS

5. Pherigo realleges by reference each and every allegation contained in the above paragraphs and incorporates the same as if fully set forth herein.

6. Pherigo was hired as a Mechanic for the City in 2009.

7. Pherigo was later promoted to the position of Wastewater Instrumentation Technician.

8. At all relevant times, Dee Hodge ("Hodge") was the Director of Wastewater Services for the City.

9. The City gave Hodge the power and authority to supervise Pherigo. It also gave Hodge the power to hire, fire, and change the terms and conditions of Pherigo's employment.

10. At all relevant times, Mark Mitton ("Mitton") was the Pretreatment Coordinator and City Administrator.

11. Mitton had the power to hire, fire, and change the terms and conditions of Pherigo's employment.

12. On numerous occasions, Pherigo was present when Hodge yelled at employees in the wastewater department. This yelling occurred generally against the women in the office if any detail displeased Hodge. Hodge's treatment of the women in the department was worse than his treatment of men.

13. Pherigo observed that Hodge placed restrictions on his coworker, Lindsey Yeaman ("Yeaman"). The restrictions on Yeaman included not allowing her to get coffee with coworkers and forbidding her from wearing a cap at work. All other employees of the

**COMPLAINT AND DEMAND FOR JURY TRIAL– Page 2**

department except for Yeaman were permitted to get coffee and wear caps at work.

14. On or about January 6, 2020, Pherigo observed Yeaman, his coworker, in the hallway at work.

15. Yeaman informed Hodge that she was going to City Hall to report the harassment that she had suffered from Hodge.

16. Pherigo offered to drive Yeaman to City Hall as she appeared distraught.

17. Pherigo attended the meeting that Yeaman had with Carol Anderson ("Anderson") of human resources.

18. Pherigo listened as Yeaman reported hostile actions of Hodge.

19. Pherigo then spoke and informed Anderson that he had also witnessed Hodge's hostile behavior towards Yeaman.

20. After the meeting, Pherigo learned from Yeaman that in addition to hostile behavior, Hodge had made sexual advances towards Yeaman.

21. On or about February 3, 2020, Pherigo reported Hodge's sexual advances towards Yeaman to Anderson at City Hall.

22. Later that same day, Pherigo was placed on administrative leave pending the investigation of Hodge's harassment of Yeaman.

23. Before the investigation into Hodge's sexual harassment was complete, and before Yeaman's hearing, City employees were informed that Yeaman had been terminated. The employees were also aware that Pherigo had been placed on leave.

24. The City's decision to leave Hodge in the workplace and place his accusers on leave had a chilling effect on the remaining City employees and tainted the City's investigation into Hodge's harassment.

**COMPLAINT AND DEMAND FOR JURY TRIAL– Page 3**

25. On or about February 10, 2020, Pherigo attended Yeaman's termination hearing.

26. Hodge presided at the hearing. Anderson was also present.

27. On or about February 13, 2020, Mitton, City Administrator, informed Pherigo that an investigation had determined that there was no sexual harassment of Yeaman. He instructed Pherigo to return to work on February 18, 2020.

28. At no time prior to February 3, 2020 had Pherigo received a negative employee review or been written up for poor performance or violations of City policies.

29. Pherigo returned from his administrative leave on February 18, 2020, as per his instructions from Mitton.

30. On the morning of February 18, 2020, Pherigo informed Hodge of a medical appointment for his rheumatoid arthritis scheduled for later that day.

31. Hodge became enraged and then accused Pherigo of being drunk and tampering with department's computer program.

32. Pherigo informed Hodge that he was not drunk and had not tampered with the computer program.

33. Hodge then informed Pherigo that he would take Pherigo's resignation.

34. After the interaction with Hodge that morning, Pherigo met with Anderson to report Hodge's behavior against him. Pherigo informed Anderson that Hodge became angered when Pherigo mentioned a medical appointment and Hodge was retaliating against Pherigo for his report of Hodge's behavior on February 3, 2020.

35. At that time, Pherigo informed Anderson that he would keep written records of Hodge's behavior.

36. On February 18, 2020, the City gathered statements from coworkers of Pherigo

who interpreted his statement that he "didn't want anyone to get hurt" as a potential threat of violence.

37. These allegations of threats of violence were false.

38. The false allegations of threats of violence were gathered as a pretext for negative employment actions against Pherigo.

39. Later on February 18, 2020, Mitton, the City Administrator, appeared at the control room with a police officer.

40. Mitton accused Pherigo of making a death threat against Hodge.

41. Pherigo denied making a death threat against Hodge.

42. At the instruction and request of Mitton, Pherigo was immediately escorted out of the workplace and off City property.

43. Despite Pherigo's request, Mitton did not allow Pherigo to retrieve his personal property, including valuable tools, from the workplace.

44. On February 26, 2020, Pherigo received a Notice of Proposed Disciplinary Action of Termination. It contained the false and pretextual allegation that Pherigo had made a threat of violence against Hodge on February 3, 2020.

45. Anderson did not mention these alleged threats to Pherigo when she met with him on February 3, 2020.

46. Mitton did not mention these alleged threats when Mitton informed Pherigo on February 13, 2020, that Pherigo could return to work on February 18, 2020.

47. Anderson did not mention these alleged threats to Pherigo when she met with him on the morning of February 18, 2020.

48. The interaction with Mark Mitton on the afternoon of February 18, 2020 was the

**COMPLAINT AND DEMAND FOR JURY TRIAL– Page 5**

first time that any one at the City had mentioned to Pherigo that some of his statements were considered to be threats of violence.

49. On March 5, 2020, Pherigo attended a hearing with Mitton and Anderson. Pherigo informed them that he never made threats of violence against Hodge.

50. On March 18, 2020, Pherigo received a certified letter stating that he was terminated effective March 16, 2020.

## III.
## RETALIATION
## 42 U.S.C. § 2000e

51. Pherigo realleges by reference each and every allegation contained in the above paragraphs and incorporates the same as if fully set forth herein.

52. Pherigo assisted Yeaman in her January 6, 2020 report to Anderson of Hodge's abusive behavior.

53. Pherigo made a separate report to Anderson on February 3, 2020, of Hodge's sexual advances towards Yeaman.

54. Pherigo was placed on administrative leave on February 3, 2020, the same day that he reported Hodge's sexual advances.

55. This administrative leave was a material adverse employment action made in retaliation for Pherigo's report.

56. Pherigo reported to Anderson Hodge's abusive behavior towards him on the morning of February 18, 2020.

57. On February 18, 2020, Pherigo was once again placed on administrative leave.

**COMPLAINT AND DEMAND FOR JURY TRIAL– Page 6**

58.     This second administrative leave was a material adverse employment action made in retaliation for Pherigo's actions and report.

59.     Pherigo was subsequently terminated in retaliation for his reports made to Anderson.

60.     Pherigo's termination was a material adverse employment action made in retaliation for his report and actions.

61.     The City used the falsified allegations of violent threats as a pretext to place Pherigo on leave and then terminate him.

62.     These adverse employment decisions of forced leave and termination caused Pherigo to incur damages including, but not limited to, lost wages, lost benefits and non-economic damages.

## IV.
## RETALIATION
### Idaho Code § 67-5902 *et. seq.*

63.     Pherigo realleges by reference each and every allegation contained in the above paragraphs and incorporates the same as if fully set forth herein.

64.     The adverse employment decisions were a reprisal by the City, Mitton, and Hodge for opposing unlawful practices under Idaho Code section 67-5911.

65.     The adverse employment decisions have caused Pherigo damages including, but not limited to, lost wages, lost benefits and non-economic damages.

## V.
## Americans with Disabilities Act
### (City)
### 42 U.S.C. § 12101 *et. seq.*

66. Pherigo realleges by reference each and every allegation contained in the above paragraphs and incorporates the same as if fully set forth herein.

67. Pherigo has severe rheumatoid arthritis ("RA").

68. His RA is a disability under the Americans with Disabilities Act, ("ADA") in that it is a physical impairment that interferes with one or more major life activity.

69. Pherigo was performing his job in a satisfactory manner. He successfully automated City wastewater systems.

70. On October 18, 2018, Pherigo missed work due to health issues caused by his RA.

71. That day, Hodge informed Pherigo's coworkers that Pherigo was fired. Hodge instructed them to pack up Pherigo's belongings.

72. When Pherigo returned to work the following day, he was told by coworkers that Hodge had fired him.

73. Pherigo reported the situation to Anderson of human resources. He was told that he was not fired.

74. Hodge had knowledge of Pherigo's RA.

75. The City then acknowledged Pherigo's disability in writing and agreed to provide for leave as needed.

76. Pherigo was instructed by the City to make requests of medical leave to Hodge.

77. On the morning of February 18, 2020, Pherigo made a request for a reasonable accommodation, namely to attend a medical appointment for his RA.

78. Hodge yelled at and acted in a hostile manner towards Pherigo and accused Pherigo of tampering with machinery after Pherigo made the request.

79. This hostile reaction was motivated in part by Pherigo's request to attend a medical appointment for his RA.

80. The interaction escalated and resulted in Hodge's request for Pherigo's resignation.

81. Pherigo was placed on leave later that day and eventually terminated.

82. Pherigo's placement on leave and termination were motivated in part by his request for time off to leave work to receive medical treatment for his disability.

83. The discrimination of Pherigo by the City has caused Pherigo damages including, but not limited to, lost wages, lost benefits and non-economic damages.

## VI.
## Discrimination on the basis of Disability
## Idaho Human Rights Act

84. Pherigo realleges by reference each and every allegation contained in the above paragraph and incorporates the same as if fully set forth herein.

85. Pherigo is an individual with a disability as defined in Idaho Code section 67-5902.

86. Pherigo's disability and his reasonable requests for leave were a motivating factor in his forced administrative leave and subsequent termination.

87. The discrimination suffered of Pherigo by the City has caused him to suffer damages including, but not limited to, lost wages, lost benefits and non-economic damages.

## VII
## CONVERSION

88. Pherigo realleges by reference each and every allegation contained in the above paragraphs and incorporates the same as if fully set forth herein.

89. On or about the afternoon of February 18, 2020, City Administrator Mark Mitton instructed Pherigo to leave the workplace, City property, immediately.

90. Pherigo asked Mitton if he could first retrieve his personal property before being required to leave the workplace.

91. Mitton refused to allow Pherigo to retrieve his personal property before leaving the workplace.

92. Pherigo's personal property located at the workplace included tools, medication and keys.

93. Mitton informed Pherigo that if Pherigo ever returned to the workplace, Pherigo would be charged with trespass.

94. By refusing to allow Pherigo to collect or retrieve his personal property, the City wrongfully gained dominion of that personal property.

95. The personal property was owned by Pherigo at the time that the City denied Pherigo possession of the personal property.

96. The City has still not permitted Pherigo to return to the workplace to retrieve his personal property.

97. The City has not arranged for the return of Pherigo's personal property in a manner that would not require Pherigo to return to the workplace.

98. Pherigo has suffered damages in the amount of this converted personal property, including tools valued at least $2,000.

**COMPLAINT AND DEMAND FOR JURY TRIAL– Page 10**

**ATTORNEY'S FEES**

99. Pherigo realleges by reference each and every allegation contained in the above paragraphs and incorporates the same as if fully set forth herein.

100. Due to the City's actions, Pherigo has been required to retain the services of counsel and has retained the firm of STOVER, GADD & ASSOCIATES, PLLC, to prosecute this action. Should Pherigo be successful in this action, the City, in addition to being responsible for Pherigo's costs incurred herein, should be responsible for Pherigo's reasonable attorney's fees incurred herein including, but not limited to, 42 United States Code section 2000e-5.

**PRAYER FOR RELIEF**

WHEREFORE, Pherigo respectfully prays for judgment against the City as follows:

1. That Pherigo recover his damages from the City including lost wages, lost benefits and non-economic damages for the City's violation of the following:
    a. 42 U.S.C. § 2000e;
    b. Idaho Code § 67-5902;
    c. 42 U.S.C. § 12101; and
    d. Idaho Code § 5902.
2. That the Pherigo recover his converted personal property, or the value thereof, from the City.
3. That Pherigo recover his costs and attorney's fees from the City.
3. For such other and further relief as the Court deems just under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Pherigo demands trial by jury in this action of all issues so triable.

**COMPLAINT AND DEMAND FOR JURY TRIAL– Page 11**

DATED this 10th day of September, 2021.

                                      STOVER, GADD & ASSOCIATES, PLLC

                                      By */s/ Kelly H. Andersen*
                                             Kelly H. Andersen
                                             Attorneys for Plaintiff