BLAKE G. HALL, ESQ.
SAM L. ANGELL, ESQ.
DILLON S. ERICKSON, ESQ.
HALL ANGELL & ASSOCIATES, LLP
1075 S Utah Avenue, Suite 150
Idaho Falls, Idaho 83402
Telephone (208) 522-3003
Fax (208) 621-3008
*ISB Nos. 2434, 7012 and 10312*
bgh@hasattorneys.com
sla@hasattorneys.com
dse@hasattorneys.com

Attorneys for Defendant City of Burley

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OTTIS D. PHERIGO, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF BURLEY, an Idaho municipal corporation,<br><br>        Defendant. | Case No. 4:21-cv-364<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Defendant, CITY OF BURLEY, by and through counsel of record, HALL

ANGELL & ASSOCIATES, LLP, submits this Memorandum in Support of Motion for

Summary Judgment as follows:

## **INTRODUCTION**

Plaintiff Ottis D. Pherigo was employed by the City of Burley in the wastewater

department. The City terminated his employment after learning that Plaintiff made threats

to cause bodily harm and kill his supervisor, Dee Hodge. The City was rightfully

concerned with the nature of the threats and removed Plaintiff from the workplace. The

City then initiated the process for terminating Plaintiff's employment. Throughout that process, Plaintiff did not present any evidence in opposition to the proposed termination of his employment. In this lawsuit, Plaintiff attempts to discount the severity of the threats he made and attempts to distract the Court with claims of retaliation and disability discrimination. The City considered only the threats and workplace safety concerns when it decided to terminate Plaintiff's employment. Therefore, the Court should grant the City's motion and dismiss Plaintiff's claims.

## ARGUMENT

I. **THE CITY'S ONLY REASON FOR TERMINATING PLAINTIFF'S EMPLOYMENT WAS THE THREATS HE MADE TO HARM AND/OR KILL DEE HODGE AND WAS NOT MOTIVATED BY ANY IMPROPER PURPOSE.**

### A. Plaintiff's threats to harm or kill Dee Hodge were the only motivating factor for the City's employment decision.

The City terminated Plaintiff's employment based solely on multiple reports that he had threatened to cause bodily harm and/or kill his supervisor, Dee Hodge. Despite that very clear non-retaliatory and non-discriminatory reason, Plaintiff claims his termination violated Title VII, the Americans with Disabilities Act, and the Idaho state counterparts to both statutes. Although retaliation and discrimination claims have different elements and Plaintiff has the burden to make a prima facie case for each of his claims, the burden-shifting framework established by McDonnell Douglas applies to both types of claims. *Herrera v. State of Idaho*, 2005 WL 2367540, at *3 (D. Idaho Sept. 27, 2005) and *Fenwick v. Tessenderlo Kerley, Inc.*, No. CV 03-384-S-MHW, 2004 WL 6240934, at *9 (D. Idaho Nov. 16, 2004).

Under *McDonnell*, a plaintiff must first establish a prima facie case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802. If a plaintiff succeeds in establishing a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory/retaliatory reason for taking the alleged unlawful actions. *Id.*

If the defendant employer meets that burden, a plaintiff must demonstrate that the employer's "articulated reason is pretextual 'either directly persuading the court that a [unlawful] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Evidence of pretext must be both specific and substantial to overcome the legitimate reasons put forth by the employer. *Bergene v. Salt River Project Improvement & Power Dist.*, 272 F.3d 1136, 1143 (9th Cir. 2001).

Here, the City denies that it was motivated by any improper purpose, including retaliation and/or discrimination. Rather, the City terminated Plaintiff's employment after learning that Plaintiff had threatened to do bodily harm and/or kill Dee Hodge. Statement of Facts ("SOF"), ¶¶ 1, 16; Declaration of Carol Anderson, ¶ 6 and Ex. A. Specifically, Dustin Raney, who was the lead wastewater operator at the time, reported:

> On the morning of 2/3/2020 right after work began, Dan [Pherigo] approached me and stated that Dee [Hodge] had crossed the line and when shit hits the fan I need to stay out of it because he doesn't want anyone else getting hurt. Rusty [Blackner] came to me about an hour later and informed me that Dan [Pherigo] had told him the same thing. Stormy [Oldham] also came to me with concerns for everyone's safety and stated that he was worried about what dan [sic] may do. The next morning, I told Dee what Dan had said and about the others [sic] concerns and we went to city hall and discussed the matter with Carol Anderson and Mark Mitton. Carol took meeting notes. Mark told us he doesn't believe that Dan meant

anything about his statements being of a physical nature. He also informed us that Dan had filed a sexual harassment complaint against Dee and that we would both be being contacted by the County Administrator, who would be conducting an investigation, for questioning.

I was contacted by the County Administrator at 3 pm on 2/4/2020 and was asked to come to his office to discuss the complaint and I went up and did a recorded interview with him. On the morning of 2/5/2020 I was informed by Dee that Dan had sent [sic] home on administrative leave until these matters had been resolved. We also had a staff lunch that day to discuss the allegations towards Dee, Lindsays [sic] termination being strictly due to lack of job performance, and about Dan [Pherigo] being placed on administrative leave because he was very emotional and making threats. Stormy, Dee and I expressed that we were concerned for all of our safety because Dans [sic] mental state and because of the threats that were made.

2/6/2020 Stormy asked me to accompany him to city hall to discuss his concerns with Mark and Carol. Carol took meeting minutes while we were there. He spoke about how nervous we are for the staff safety now and especially any retaliation from Dan now or if he is allowed to return to work. He also discussed the city policy portion about employees not being allowed to carry firearms and how that rule should be revised so that we could be allowed to protect ourselves. Mark told him the same thing he told Dee and me.

*Id.* Another employee, Rusty Blackner, an operator in the wastewater department, reported:

I Rusty Blackner had Dan approach me on feb 3 after lindsey [sic] was told to leave work on Friday and dan [sic] told me that he was going to kill dee [sic] and that he wanted me and my other co-workers to stay out of the way because he didn't want anyone else to get hurt. Now I do not feel comfortable being at work for fear of getting hurt or one of my co-workers getting harmed. I feel that dan [sic] is a threat and should not be aloud [sic] at work."

*Id.* Another employee, Stormy Oldham, also an operator, reported the following:

on monday [sic] morning Feb 3rd I went in to [sic] the control room to look at the scuda 7:45 AM Dan came in set down upset and said Dee hurt someone he cared about and he wont [sic] me to stay out of what ever [sic] was going to happen and to till [sic] glen [sic] stay out it [sic] because he didn't want us hert [sic]!"

*Id.* The City did not learn of these threats until on or about February 18, 2020, but once the City learned of them, it placed Plaintiff on paid administrative leave. Declaration of Mark Mitton, ¶¶ 15–16. The City then decided that Plaintiff's actions were a sufficient violation of City policy to warrant a proposed termination. *Id.*, ¶ 18. The exact reasons for the proposed termination were included in the Notice of Proposed Disciplinary Action – Termination, delivered to Plaintiff:

> On or about February 3, 2020 you spoke separately to three employees in the Wastewater Department and said substantially the following: (1) you said to [Mr. Raney] that [Mr. Hodge] had crossed the line and when shit hits the fan you need him to stay out of it because you don't want anyone else getting hurt; (2) you told [Mr. Oldham] that [Mr. Hodge] hurt someone you care about and you wanted him to stay out of whatever was going to happen and until then stay out of it because you don't want them hurt; and (3) you told [Mr. Blackner] that you were going to kill [Mr. Hodge] and that you wanted [Mr. Blackner] and his co-workers to stay out of the way because you didn't want anyone else to get hurt. These statements caused the employees to fear for their safety and the safety of their co-workers. These incidents were reported to me because the employees at the Wastewater Department did not feel safe while you worked at the Wastewater Department. The employees were also concerned because they believe you are unstable, unpredictable, and have anger issues that made them feel unsafe at work. A few employees said they were considering carrying firearms at work because of the threats made by you.

Mitton Declaration, Ex. B. The Notice also informed Plaintiff that he could be heard on the issue of the proposed termination on March 5, 2020. *Id.*

At the hearing, Plaintiff did not present any evidence or explanation and only made a short statement that he did not make the statements and that he was trying to protect his coworker, Lindsey Yeaman. *Id.*, ¶ 21. Plaintiff's short statement at the hearing did not convince the City it should deviate from the proposed termination of Plaintiff's employment. Therefore, the City had legitimate, non-retaliatory, and non-discriminatory

reasons to terminate Plaintiff's employment which is sufficient to meet the City's burden under the *McDonnell Douglas* framework regarding Plaintiff's retaliation and discrimination claims.

The only way Plaintiff's claims can survive summary judgment is if he can show substantial and specific evidence that the City's reasons were merely pretextual or otherwise unworthy of credence. Plaintiff has no such evidence. Therefore, the Court should grant the City's motion for summary judgment on Plaintiff's retaliation and discrimination claims.

**B. Paid administrative leave was not an adverse employment action.**

The City placed Plaintiff on paid administrative leave but it did not constitute an adverse employment action because the City continued to pay Plaintiff his normal wages, maintained his benefits, and he returned to his previous position after the suspension. A paid suspension that does not change an employee's position, rate of pay, or benefits is not an action that would dissuade a reasonable worker from engaging in a protected activity and cannot be an adverse employment decision. *Parker v. United Airlines, Inc.*, No. 2:19-CV-00045-BSJ, 2021 WL 3206777, at *5 (D. Utah June 28, 2021). In *Parker*, an employee was suspended with pay and experienced no change in her benefits while the employer conducted an investigation. *Id.* The Court held that a "reasonable employee could not find suspension materially adverse" under those circumstances. *Id.*

In this case, Plaintiff's administrative leave was not a materially adverse employment action. The City continued to pay Plaintiff's regular salary and benefits for the duration of the leave. Declaration of Mark Mitton, ¶12. Plaintiff then returned to work at his previous position with no change to his wages, benefits, or job responsibilities. *Id.* A

period of administrative leave under those circumstances is not an adverse employment action. To the extent Plaintiff's retaliation claims are based on the City's decision to place him on paid administrative leave, Plaintiff fails to make a prima facia case.

If the Court finds that Plaintiff has made a prima facie case of retaliatory suspension, the City is entitled to produce evidence of legitimate and non-retaliatory reasons for placing Plaintiff on paid administrative leave. Plaintiff's report of alleged sexual harassment came shortly after Ms. Yeaman received a notice of proposed disciplinary action for her failure to meet work performance standards and requirements. SOF, ¶ 4; Mitton Declaration, ¶ 8. She did not return to work after receiving the notice. Mitton Declaration, ¶ 10. Her absence and pending termination caused other employees to shift their duties to ensure Ms. Yeaman's job responsibilities were fulfilled which caused additional burdens and stress on the employees. *Id.* Plaintiff took Ms. Yeaman's proposed termination especially hard. In fact, he was outright angry about it.

Shortly after that, Plaintiff went to Ms. Anderson's office where he reported his suspicions that Ms. Yeaman had been subjected to alleged sexual harassment. Complaint, ¶21; SOF ¶¶ 5; Anderson Declaration, ¶ 4. During the time Plaintiff was in Ms. Anderson's office, she observed that Plaintiff was upset and emotional. Anderson Declaration, ¶ 4. The City was aware of the upheaval in the wastewater department and Plaintiff's behavior and attitude were not conducive to returning the workplace to normal. The City simply sought to calm the situation down by placing Plaintiff on paid leave. Mitton Declaration, ¶ 12. Considering the entire situation, the City's reasons for placing Plaintiff on paid administrative leave were legitimate and non-retaliatory and Plaintiff has no evidence to

suggest that those reasons are pretextual or unworthy of credence. Therefore, the Court should dismiss Plaintiff's claims for unlawful retaliation.

## II. PLAINTIFF'S CONVERSION CLAIM.

### A. The Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

After granting the City's motion for summary judgment as discussed above, the Court should decline to exercise supplemental jurisdiction over Plaintiff's conversion claim. Plaintiff's conversion claim is based on state law. *See Chilkat Indian Vill. v. Johnson*, 870 F.2d 1469, 1471 (9th Cir. 1989) (Plaintiff's claim was "a simple conversion claim with no federal underpinning"); *see also Dixon v. Lockhart-Harriott*, No. CV1921403RBKSAK, 2021 WL 3879078, at *3 (D.N.J. Aug. 31, 2021) ("Conversion is a state law claim; there is no federal cause of action for conversion or theft."); *Selck v. Cnty. of Sacramento*, No. 219CV00489KJMACPS, 2019 WL 2389350, at *2 (E.D. Cal. June 6, 2019) ("Claims of conversion, interference with a business, and duress are all state law claims, and implicate no federal law.").

Under 28 U.S.C. § 1367(a), a federal court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy…." However, a federal district court may decline supplemental jurisdiction under certain circumstances, including:

> (1) if the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Additionally, federal district courts must consider "the *Gibbs* values of economy, convenience, fairness and comity." *Martin v. Smith*, No. CV 08-470-S-CWD, 2009 WL 10712518, at *4 (D. Idaho Mar. 17, 2009) (*citing United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)).

In this case, once the federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiff's conversion claim. A conversion claim is not novel or complex and it does not predominate Plaintiff's federal claims. However, once the Court grants the City's motion for summary judgment and dismisses the federal claims (and state claims with identical analyses), Plaintiff's conversion claim will lack any federal implication and declining to exercise supplemental jurisdiction will be proper.

Additionally, the *Gibbs* values support declining supplemental jurisdiction. An Idaho state magistrate court or a small claims court would be a far more convenient and efficient forum for Plaintiff to pursue a conversion claim. There is simply no need for a federal court to handle a conversion claim where the alleged value of the converted property is ~ $2,000.00.

**B. If the Court retains Plaintiff's state law claims, it should dismiss them.**

If the Court decides to exercise supplemental jurisdiction over Plaintiff's conversion claim, it should grant the City's motion for summary judgment and dismiss the claim. In Idaho, a "claim of conversion requires proof of three elements: (1) that the charged party wrongfully gained dominion of property; (2) that property is owned or possessed by plaintiff at the time of possession; and (3) the property in question is personal property." *Clark v. Jones Gledhill Fuhrman Gourley, P.A.*, 163 Idaho 215, 223, 409 P.3d 795, 803 (2017) (internal citations omitted). Conversion requires "a distinct act of

dominion wrongfully exerted over another's personal property" or the intentional exercise of dominion" over another's personal property. *Gissel v. State*, 111 Idaho 725, 727, 727 P.2d 1153, 1155 (1986) (internal citations omitted).

Moreover, "conversion cannot originate in the exercise of a legal right …" and there can be no conversion "if [the] possession of property was not acquired by a tortious taking" or if "the possessor does not appropriate or use the property in a fashion" contrary to the owner's interest unless "a proper demand for possession was made by the one who is entitled thereto and, second, that the possessor wrongfully refused delivery." *Peasley Transfer & Storage Co. v. Smith*, 132 Idaho 732, 743–44, 979 P.2d 605, 616–17 (1999). In *Peasley*, a judgment creditor held a valid judgment lien and then executed a valid writ of execution to take possession of certain personal property awarded to an individual in a divorce proceeding. *Id.* 744, 979 P.2d at 617. Unbeknownst to the creditor, the individual transferred ownership of the property to his ex-wife. *Id.* The Court held that the taking of the property was not tortious because it was done under a valid judgment and a valid writ and the judgment creditor was simply exercising her legal right to enforce the judgment, although mistakenly. *Id.* The ex-wife however, made no demand on the creditor to return her property, and consequently, her claim for conversion never arose. *Id.*

In this case, Plaintiff's conversion claim must be dismissed because Plaintiff never requested the return of his personal property items. During Plaintiff's deposition the following exchange occurred:

> Q. Did you ever request to have your items returned to you after the termination of your employment?
> A. No.
> Q. Did the City ever offer to return them to you?
> A. No.

Q. Was anything returned to you?

A. Nothing.

Q. And did you send any email or any written communication asking about it?

A. Nope. Because I feared getting arrested. I wouldn't put it past them.

Q. Was there anything that stopped you from sending an email and saying, "Hey, box up my stuff"?

A. And who would I send that to?

Declaration of Counsel, Ex. G, Transcript of Deposition of Plaintiff, p. 118, ll. 3–17.

Therefore, based on the lack of evidence and Plaintiff's own admission, the Court should grant the City's motion for summary judgment on Plaintiff's claim for conversion.

## **<u>CONCLUSION</u>**

Based on the foregoing, the Court should grant the City's motion and dismiss Plaintiff's claims in their entirety.

Dates this 9th day of November, 2022.

_____

BLAKE G. HALL

**CERTIFICATE OF SERVICE**

I hereby certify that I served a true copy of the foregoing document upon the following this 9th day of November, 2022, by the method indicated below:

Kelly H. Andersen, Esq.                    [X] CM/ECF
David W. Gadd, Esq.
STOVER GADD & ASSOC.
PO Box 1428
Twin Falls, ID 83303
Email: kha@magicvalleylaw.com
Email: dwg@magicvalleylaw.com


_____
BLAKE G. HALL