BLAKE G. HALL, ESQ.
SAM L. ANGELL, ESQ.
DILLON S. ERICKSON, ESQ.
HALL ANGELL & ASSOCIATES, LLP
1075 S Utah Avenue, Suite 150
Idaho Falls, Idaho 83402
Telephone (208) 522-3003
Fax (208) 621-3008
*ISB Nos. 2434, 7012 and 10312*
bgh@hasattorneys.com
sla@hasattorneys.com
dse@hasattorneys.com

Attorneys for Defendant City of Burley

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OTTIS D. PHERIGO, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF BURLEY, an Idaho municipal corporation,<br><br>        Defendant. | Case No. 4:21-cv-364<br><br>**DECLARATION OF MARK MITTON IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

I, MARK MITTON, hereby swear under penalty of perjury as follows:

1. That I am over the age of eighteen (18) and am competent to testify in this matter. I make this declaration based on my own personal knowledge.

2. I am the City Administrator for the City of Burley. I have worked in this position since 1998.

3. I am familiar with the City processes for hiring, firing, and other employment issues including employee discipline.

4.      I was involved in various ways regarding Ottis Dan Pherigo and his employment with the City. The City hired Mr. Pherigo in 2009 as a mechanic. He was later employed as a wastewater maintenance technician.

5.      All City employees are subject to the policies and procedures contained in the City's Personnel Rules and Regulations.

6.      Dee Hodge was also employed by the City. His position was the Director of Wastewater Services. He was Mr. Pherigo's supervisor.

7.      Although Mr. Hodge was the supervisor, he did not have unlimited authority to hire or fire employees. He was subject to the limitations and processes contained in the City's Personnel Rules and Regulations.

8.      On or about January 31, 2020, Mr. Hodge delivered a notice of proposed termination to a City employee named Lindsey Yeaman based on her failure to meet work performance standards and requirements.

9.      Attached hereto as Exhibit A is a true and correct copy of the notice of proposed termination sent to Ms. Yeaman.

10.     Ms. Yeaman did not return to work after she received the notice of proposed termination so the other employees in the wastewater department had to figure out how to cover for her and make sure he job responsibilities were fulfilled in her absence. That seemed to cause the employees in the wastewater facility to experience extra stress, confusion, and speculation. Mr. Pherigo apparently took Ms. Yeaman's notice especially hard.

11.     Shortly after that, I was informed that Mr. Pherigo had met with Ms. Anderson to report that Ms. Yeaman had allegedly been subjected to sexual advances by Mr. Hodge.

12.     The whole situation seemed to be very tense so I decided it would be a good idea to defuse the situation and attempt to let some sense of normalcy return to the workplace in the wastewater facility. I decided to place Mr. Pherigo on paid administrative leave. I didn't make any other changes to Mr. Pherigo's employment including compensation and benefits.

13.     After some time had passed, I felt it was appropriate for Mr. Pherigo to return to work. It was communicated to Mr. Pherigo to return to work on February 18, 2020.

14.     I considered Mr. Pherigo's administrative leave completed on February 18, 2020. He returned to the exact same position of employment he had before.

15.     My next involvement with Mr. Pherigo was when I was informed, mainly by Ms. Anderson, that several City employees in the wastewater department were surprised to see Mr. Pherigo return to work and reported concerns for their safety based on comments and threats Mr. Pherigo had made directed at Mr. Hodge. I considered the threats sufficient to warrant action on my part.

16.     Once again, I placed Mr. Pherigo on paid administrative leave. I asked a Cassia County Sheriff to accompany me while I informed Mr. Pherigo of my decision to place him on leave. I also told him to leave the City property or be charged with trespass. Mr. Pherigo left without incident.

DECLARATION OF MARK MITTON IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 3

17.    As with the previous administrative leave, I didn't make any other changes to Mr. Pherigo's compensation or benefits.

18.    After considering the matter further, I decided Mr. Pherigo's actions were a sufficient violation of City policy to warrant a proposed termination. On or about February 27, 2020, I signed a Notice of Proposed Disciplinary Action – Termination and had it delivered to Mr. Pherigo. Mr. Hodge was not involved in the process.

19.    Attached hereto as Exhibit B is a true and correct copy of the Notice of Proposed Disciplinary Action – Termination.

20.    As part of the notice, Mr. Pherigo was informed that he was entitled to an opportunity to be heard which would take place on March 5, 2020. Mr. Pherigo elected to hold the hearing.

21.    On March 5, 2020, Ms. Anderson and I met with Mr. Pherigo to discuss the notice. However, Mr. Pherigo essentially declined to defend himself. He only denied making threats and said he was trying to protect Ms. Yeaman.

22.    After the hearing, I decided to move forward with terminating Mr. Pherigo's employment. He did not give any reasons for me to change the proposed termination indicated in the notice. On or about March 16, 2020, I signed and sent a Notice of Termination of Employment to Mr. Pherigo informing him that his employment with the City was terminated and that he could appeal that decision to the Mayor.

23.    Attached hereto as Exhibit C is a true and correct copy of the Notice of Termination of Employment I sent to Mr. Pherigo.

24.    Mr. Pherigo did not appeal the decision to terminate his employment to the Mayor.

DECLARATION OF MARK MITTON IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 4

25.     Finally, I do not recall an instance where Mr. Pherigo asked me or anyone from the City to gather his personal belongings he may have left in the wastewater facility.

Dated this __ day of November, 2022.

_____

Mark Mitton

**CERTIFICATE OF SERVICE**

I hereby certify that I served a true copy of the foregoing document upon the following this ___ day of November, 2022, by the method indicated below:

Kelly H. Andersen, Esq.                       [X] CM/ECF
David W. Gadd, Esq.
STOVER GADD & ASSOC.
PO Box 1428
Twin Falls, ID 83303
Email: kha@magicvalleylaw.com
Email: dwg@magicvalleylaw.com




_____
BLAKE G. HALL



DECLARATION OF MARK MITTON IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 6

# EXHIBIT A



City of Burley
1401 Overland Ave
Burley ID, 83318
(208) 878-2224

To:      Lindsey Yeaman
From:   Dee Hodge

Re:      NOTICE OF PROPOSED TERMINATION OF EMPLOYMENT

Date:   January 31, 2020

<u>CAUSE FOR ACTION</u>

Lindsey has not been doing her due diligence to maintain the pretreatment program.

For the pretreatment year of 2019 Lindsey did not do any non-domestic inspections i.e. restaurants, schools, oil and lube shops as indicated by the check sheet.

To my knowledge Lindsey has not yet published the 2019 violations and names of the industrial customers that have violated. I know that during 2019 Gem State Processing has had about 20 violations for ammonia limits that have not been addressed. I looked at the 2019 Industrial Customer Self testing spreadsheet where all the monthly data that is reported to Lindsey is accumulated. None of the customers data has been entered since the last part of November and some haven't been done since October reporting. Lindsey is supposed to have all this data into an annual report due to the IPDES website by the first of March and there is no indication she has even been working on it. The report from the DEQ PCI was for the year of 2018 and there are a lot of violations. There were 14 violations between the Enforcement Response Plan and the Permits. We were aware of some of the violations in the permits and had made that a priority to fix after the SUO was finalized and approved in November 2019. There are 13 areas of concerns with Permits and DEQ listed 4 areas of concern during their PCI inspections. One area of concern is that the inspection of Gem State Processing did not cover the entire facility. This is consistent with all the industrial inspections done in 2019 that Lindsey did not do a thorough inspection of the entire facilities. This pretreatment program has deteriorated for the last few years and Lindsey has not been doing the work that is required to keep this program up to standards.

Supporting information for this cause of action is contained in the following paragraphs.

In July of 2019 we received notification from DEQ that they would be doing a Pretreatment Compliance Inspection (PCI) on September 16th and all requested documents needed to be submitted to them before August 16th in order to inspect the files before the PCI. I approached Lindsay to verify she had received or seen the notice of the PCI she said she had. I told her this would be up to her to pass or fail as this has been her program and she said there were no worries that and that she was comfortable with it.

8/22    Lindsey and I had a discussion that she was not able to make the deadline DEQ had requested to get all the files they needed. I requested from DEQ that we get an extension and change the date of the PCI so we could get all the data they needed. Lindsey, Brynn and I had a conference call and the extension and change of PCI date was granted. New PCI dates are November 20 and 21.

9/16    I reached out to Brynn and asked if she had received all the requested information and she said it appeared that it was all submitted and if they needed more they would reach out. I told Lindsay that I wanted all the Industrial Inspections completed before the PCI except for the 5 DEQ reserved to do their inspection on. I also told Lindsay to get the restaurants inspected so everything was cleaned up before the PCI. NOTE: During Lindsey's performance evaluation I had given her the goal that I wanted all the inspections done by first of July).

11/22   Following the PCI Kerry from DEQ requested additional information from Lindsey. I asked Lindsey if she had received the email. She said she did and was going to get it all sent to DEQ.

12/11 I asked Lindsey if she got everything sent over to DEQ and asked if she had all the inspections done. She told me the industrial inspections were done. I asked about the restaurants she said she would try to get to them. I told her you aren't going to just try; you will get them done.

12/18 I sent an email to Kerry asking if she had received everything from Lindsey she requested. She told me she was still waiting on Lindsey to get her chain of custodies for the sampling the city did on the industries.

12/20 I told Lindsey that she needed to get the industrial flows to Katie before she could leave that afternoon. Lindsey never bothered to question me with issues but did send just the readings to Katie by email and said that she had a problem putting them on the spreadsheet I had made up. Katie email me asking why it was her place to put these readings on the spreadsheet.

12/23 Lindsey texted Dustin saying she would not be in. I put all the industrial flow readings on the spreadsheet and included the truck loads hauled by Fabri-Kal which Lindsey did not give to Katie. While looking for the truckload sheet I found an inspection form for Gem State on Lindsey's desk. This inspection form was not complete and never even had a date of the inspection nor a signature from a Gem State representative.

12/30 Lindsay drove into work and then texted Dustin saying she was in the parking lot but going back home sick. I sent email to Kerry at DEQ to see if she received the requested chain of custody from 12/11. Kerry replied saying she is still waiting for them. I had Chelsey look up the chain of custody and emailed them to Kerry. She replied that she received them.

1/6/2020 Lindsey brought her timesheet into my office and I told her we needed to have a chat. She said ok just a minute and left my office. I told Dustin to come in as a witness. When she came back into my office I shut the door and confronted her about why I am having to do her job. She acted like she didn't know what I meant so I explained having to send DEQ paperwork they requested back on 12/11. She acted like she was surprised and said she misunderstood. I told her if she had been checking her emails she would know they were still waiting for it.

1/13 I called Shawn Burton at High Desert Milk to verify that Lindsey had done the required annual inspection. He told me he couldn't be there the day Lindsey was there (which she should have rescheduled to meet with Shawn) and he told Michelle to accommodate Lindsey. Shawn told me he would verify with Michelle that the inspection took place.

1/15 Shawn called after lunch and said that he had a conversation with Michelle. He said Lindsey did not walk the premises to do an inspection. It was basically a meeting with Michelle, in Michelle's office, discussing the changes that were going to made with the new permitting process. There was no inspection, no exit interview,

no paperwork signed acknowledging an inspection. Michelle is not the proper person to discuss new permitting with.

1/15 Called Brian Wilson Gossner Foods no answer left message for him to call me. Brian called back we discussed the inspection done on 10/30. Brian remembered Lindsey being there but did not recall the date. He told me they spent more time discussing the permit application which he has not submitted yet. Lindsey told him to just do the best he can answering the questions and filling it out. He said that made him nervous because of the in depth information the application is asking for. I told him I would come over on 1/21 at 1:30 and go over it with him. As for the inspection he said they did not do a full walk through of the plant and he did not recall Lindsay having him sign anything such as an exit interview or an inspection form. He mentioned that he was a bit leery knowing that they have had a few violations that nothing has been done about. He said to be honest he has put the pretreatment on the back burner because he has not been constantly in touch with the pretreatment coordinator since Jean left.

1/23 I stopped into Pacific Ethanol to visit with Noah Hendricks about the inspection. He no longer works there but I met the new plant manager Zack Jensen. He called Noah on the phone and I asked about the inspection and how it went. He said they had some discussion about the new permit application and then walked around some of the plant. Lindsey also required them to purchase a composite sampler. Zack apologized for not getting the permit application sent in. He told me he had been trying to get ahold of Lindsey because he had several questions on how to fill it out but she hadn't never gotten back with him. I told him to hold off getting the application sent in and that I was going to see if we could get approval from DEQ to let them discharge by contract without being permitted. I told Zack I wasn't sure why she required them to purchase the sampler. He said he would have no problem especially if they don't have to be permitted.

1/24 I asked Lindsey if she had read DEQ report and she said she opened it on her phone but didn't get into reading it.

1/27 Had a discussion with Dustin about what Lindsey is working on. He said she is still working on the new permit. I told him she has been working on that since at least 3 months. I had proofread a version of it and gave it to her to verify the verbiage matches the new SUO and to put in the new local limits adopted in November. She should have had that done weeks ago.

Lindsey has been learning the pretreatment program since 2016 by helping with inspections and testing with Jean. Since 2017 Lindsey has been doing all the inspections and started learning the paperwork side of the pretreatment. In 2018 which is the year this PCI was conducted by DEQ, Lindsey was in complete control of the whole program. Jean retired in July of 2018. Lindsey claims that she is very new to the program which is a totally incorrect statement. For whatever reason Lindsey has not been doing her due diligence to maintain the pretreatment programs current status.

For the pretreatment year of 2019 Lindsey did not do any non-domestic inspections i.e. restaurants, schools, oil and lube shops as indicated by the check sheet

| Restaurants | Address | Inspection Date | NAICS Code |
|---|---|---|---|
| AC Drive in | 333 W Main | | 722211 |
| Burnt Lemon Grill | 2126 Overland | | 722211 |
| Dairy Queen | 2200 Overland | | 722211 |
| El Caporal | 610 N. Overland | | 722110 |
| Guadalajara | 2428 Overland | | 722110 |

| | | | |
|---|---|---|---|
| Kentucky Fried Chicken | 243 N Overland | | 722211 |
| La Hacienda | 139 W Main | | 722210 |
| Las Penitas | 1230 Hansen | | 722211 |
| Mcdonalds | 394 N. Overland | | 722211 |
| Morey's Steakhouse | 235 E 3rd St | | 722110 |
| Panda Express | 200 E 5th St N | | 722211 |
| Polo's Café | 1251 Overland | | 722110 |
| Pizza Hut | 2570 Overland | | 722110 |
| Shon Hing | 109 E Main | | 722110 |
| Smith's Deli | 937 E Main | | 722211 |
| Smith's Bakery | 937 E Main | | 722211 |
| Smith's Meat Dept | 937 E main | | 722211 |
| Snake River Bowl | 725 Minidoka | | 722211 |
| Stokes Deli | 1310 Pomerelle | | 722211 |
| Stokes Bakery | 1310 Pomerelle | | 722211 |
| Skokes Meak Dept | 1310 Pomerelle | | 722211 |
| Taco Bandito | 2301 Overland | | 722101 |
| Walmart Deli | 385 N Overland | | |

| Assisted Living | Address | Inspection Date | NAICS Code |
|---|---|---|---|
| City of Burley Senior Center | 2421 Overland | | |
| Hiland Estates | 2050 Hiland | | 624120 |
| Mini Cassia Care Center | 1729 Miller | | 623312 |
| Parkview | 2303 Parkview | | 623312 |
| Pomerelle Place | 1301 Bennett | | 623312 |
| | | | 623312 |

| Gas Stations | Address | Inspection Date | NAICS Code |
|---|---|---|---|
| Bobcat Corner | 95 NW Main | | 4477110 |
| Mr. Gas | 2101 Overland | | 4477110 |

| Schools | | Sept | |
|---|---|---|---|
| Burley High School | 2100 Park | Sept | 611210 |
| Burley Junior High | 700 W 16th | Sept | 611210 |
| Dworshak Elem | 102 E 19th | Sept | 611210 |
| John Evans Elem | | Sept | 611210 |
| White Pine Elem | 1900 Hiland | Sept | 611210 |
| Mountain View Elem | 333 W 27th | Sept | 611210 |

To my knowledge Lindsey has not yet published the 2019 violations and names of the industrial customers that have violated. I know that during 2019 Gem State Processing has had about 20 violations for ammonia limits that have not been addressed. I looked at the 2019 Industrial Customer Self testing spreadsheet where all the monthly data that is reported to Lindsey is accumulated. None of the customers data has been entered since the last part of November and some haven't been done since October reporting. Lindsey is supposed to have all this data into an annual report due to the IPDES website by the first of March and there is no indication she has even been working on it. The report from the DEQ PCI was for the year of 2018 and there are a lot of violations There were 14 violations between the Enforcement Response Plan and the Permits. We were aware of some of the violations in the permits and had made that a priority to fix after the SUO was finalized and approved in November 2019. There are 13 areas of concerns with Permits and DEQ listed 4 areas of concern during their PCI inspections. One area of concern is that the inspection of Gem State Processing did not cover the entire facility. This is consistent with all the industrial inspections done in 2019 that Lindsey did not do a thorough inspection of the entire facilities. This pretreatment program has deteriorated for the last few years and Lindsey has not done the work that is required to keep this program up to standards.

VIOLATION OF RULE

You have violated Rule 9 of the City of Burley Personnel Rules and Regulations.

Specifically, you have violated Rule 9: Section B:

3. Failure to meet work performance standards and requirements;

4. Willful or negligent disobedience of any job-related law, ordinance, City rule, or departmental regulation or any superior's lawful order.

5. Incompetence;

6. Inefficiency:

7. Inexcusable neglect of duties;

PROPOSED ACTION

It is proposed that your employment with the City of Burley be terminated. You are being placed on suspension, with pay, pending the outcome of the opportunity to be heard, if you choose to be heard.

<u>PROCESS</u>

The disciplinary process is set forth in Rule 9 of "Personnel Rules and Regulations of The City of Burley." A copy of Rule 9 of "Personnel Rule and Regulations of The City of Burley" is attached.  Rule 9, Section D, provided you have an opportunity to be heard before the proposed suspension is imposed. Your opportunity to be heard is scheduled to take place on **February 10, at 8:30 a.m.** in the office of Carol Anderson at City Hall, Dee Hodge will hear your response. If you wish to be heard, **you must notify Dee Hodge within three (3) business days** of the date that you are served this notice. If notice of acceptance of the opportunity to be heard is not received by Dee Hodge within three (3) business days, the opportunity to be heard will be vacated and deemed waived. Failure to participate in this opportunity to be heard shall constitute a failure to exhaust administrative remedies under city policy.

<u>ATTACHMENTS TO THIS NOTICE</u>

Attached hereto is a copy of Rule 9 of the "Personnel Rules and regulations of The City of Burley."

# EXHIBIT B



City of Burley
**1401 Overland Ave**
Burley ID, 83318
(208) 878-2224

To:    Daniel Pherigo

From: Mark Mitton, City Administrator

Date:   February 27, 2020

RE:    Notice of Proposed Disciplinary Action-Termination

You are herby notified of the following proposed disciplinary action.

## CAUSE FOR ACTION

On or about February 3, 2020 you spoke separately to three employees in the Wastewater Department and said substantially the following: (1) you said to Dustin that Dee had crossed the line and when shit hits the fan you need him to stay out of it because you don't want anyone else getting hurt; (2) you told Stormy that Dee hurt someone you cared about and you wanted him to stay out of whatever was going to happen and until then stay out of it because you didn't want them hurt; and (3) you told Rusty that you were going to kill Dee and that you wanted Rusty and his co-workers to stay out of the way because you didn't want anyone else to get hurt. These statements caused the employees to fear for their safety and the safety of their co-workers. These incidents were reported to me because the employees at the Wastewater Department did not feel safe while you worked at the Wastewater Department. The employees were also concerned because they believe you are unstable, unpredictable and have anger issues that made them feel unsafe at work. A few of the employees said they were considering carrying firearms at work because of the threats made by you.

## VIOLATION OF RULE

You have violated Rule 9; Section B; Number 13.
"Discourteous treatment of the public or other employees."

(Although your actions described above clearly violate this rule, please note that causes for disciplinary action are not limited to those listed in Rule (9)(B)).

## PROPOSED ACTION

**The proposed action for this "cause for action" and violation of rule is termination of employment for cause.**

**<u>PAID ADMINISTRATIVE LEAVE</u>**

**<u>You were placed on paid administrative leave (suspension) on February 18, 2020 pending the outcome of this proposed action. Other than to appear for your opportunity to be heard, you are not to enter any City of Burley property or you will be charged with trespassing.</u>**

**<u>PROCESS</u>**

The proposed action will be processed pursuant to Rule 9 of the Personnel Rules and Regulations of the City of Burley, adopted November 7, 2018. An opportunity to be heard is available to you. This opportunity is available on March 5, 2020 at 9:00 a.m. in the office of the City Administrator. Pursuant to Rule 9, Section D, (Copy Attached) you have three (3) business days to give notice to me, Mark Mitton, City Administrator, that you desire to be heard as scheduled, in order to discuss the reasons for the proposed disciplinary action. If you decide you want to be heard, please notify me in writing. Failure to participate in this opportunity to be heard shall constitute a failure to exhaust administrative remedies under city policy.

Email is the preferable way to give notice to me. You may email me at mmitton@burleyidaho.org.

# EXHIBIT C



**City of Burley**
**1401 Overland Ave**
Burley ID, 83318
(208) 878-2224

March 16, 2020

To: Dan Pherigo
1511 Burton Avenue
Burley, Idaho 83318

From: Mark Mitton, City Administrator

RE:    Notice of Termination of Employment

Your opportunity to be heard by me was held from 8:55 a.m. until 9:05 a.m. at Burley City Hall to listen to your response to the notice of proposed termination dated February 26, 2020 (the "Notice"). The hearing was held in my office. In attendance were you, (Dan Pherigo), Lindsey Yeaman, Carol Anderson and myself.

After hearing and reviewing your responses to the cause of action, there were no reasons given by you that would reverse the proposal of termination of employment. Although you denied having made the statements described in the Notice, I find that the three separate employees described in the Notice are credible and that you did make those statements. I also find that the statements made by you caused them to fear for their safety. Safety of employees is a priority. Thus, my proposal of termination of employment stands. Notice is hereby given that your employment with the City of Burley is terminated for cause.

VIOLATION OF RULE

You have committed the actions described in the "Cause For Action" section of the Notice. You have also violated Rule 9 of the City of Burley Personnel Rules and Regulations.

Specifically, I find that by your actions described in the Notice of Proposed Termination, you have violated the following cause of action described in Rule 9: Section B: Number 13.
"Discourteous treatment of the public or other employees."
(Although your actions described above clearly violate this rule, please note that causes for disciplinary action are not limited to those listed in Rule (9)(B)).

If you file a proper written appeal as described in Rule 9 Section E of the PERSONNEL RULES AND REGULATIONS of The City of Burley within Seven (7) calendar days after receiving this Notice of Termination of Employment (decision), you have the opportunity to have an appeal hearing before the Mayor or other designated official.  If you file an appeal, you will be provided with a written notice of a date, time and place of the hearing.  A failure to appeal will constitute s failure to exhaust administrative remedies under the City policy.  Please review Rule 9 Section E which was provided to you with the Notice.

Please Contact Carol Anderson concerning COBRA coverage and any wages you may be owed.


_____
Mark Mitton, City Administrator