Kelly H. Andersen (ISB#10511)
David W. Gadd (ISB #7605)
STOVER, GADD & ASSOCIATES, PLLC
905 Shoshone Street North
P.O. Box 1428
Twin Falls, Idaho 83303-1428
Telephone: (208) 736-9900
Facsimile: (208) 736-9929
kha@magicvalleylaw.com
dwg@magicvalleylaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| OTTIS D. PHERIGO, an individual<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CITY OF BURLEY, an Idaho municipal corporation<br><br>　　　　　Defendant. | Case No.4:21-CV-00364-DCN<br><br>**STATEMENT OF DISPUTED FACTS IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 20]** |

COMES NOW Plaintiff, Ottis Dan Pherigo ("Pherigo") by and through his counsel of record, the firm STOVER, GADD & ASSOCIATES, PLLC, and hereby submits the following Statement of Disputed Material Facts in Response to Defendant's Motion for Summary Judgement.

### STATEMENT OF DISPUTED MATERIAL FACTS.

1.　　Pherigo disputes that he made threats of violence to his coworkers. *Decl. Pherigo*, ¶ 33-34. Pherigo was fired as a result of his filing of a harassment complaint against Hodge and his subsequent interactions with Hodge. *Id.*, ¶ 35.

**STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 20]– Page 1**

2. Pherigo initially kept to himself at work. The first six months that he worked with Yeaman, he didn't speak to her. *Decl. Pherigo*, ¶ 37. Eventually, he developed a professional relationship with his coworkers, including Chelsey Ferrin and Lindsey Yeaman. *Id.*, ¶ 38; *Decl. Andersen*, **Ex. F,** 85:13-18.

3. Hodge personally delivered a Notice of Proposed Termination to Lindsey Yeaman ("Yeaman") on January 31, 2020. Pherigo disputes that Yeaman's termination was for poor job performance. He maintains that it was in retaliation for Yeaman's report of Hodge's mistreatment of her on January 6, 2020. *Decl. Pherigo*, ¶ 12,

4. On February 3, 2020, Pherigo went in to report Hodge for sexual harassment. *Decl. Pherigo*, ¶ 9. Pherigo denies that he was highly emotional at that time. The only written record the City has produced regarding Pherigo's report to Anderson on February 3, 2020 is the sentence: "Dan complains that Dee Hodge sexually harassed Lindsay [sic] Yeaman. *Decl. Andersen*, ¶ 15.

5. At her deposition, Anderson stated that she didn't recall anything about what Pherigo reported to her that day except that he said that Yeaman was sexually harassed. *Decl. Andersen*, **Ex. D**, 75:12-25; 76:1-7. Anderson stated that she did not recall any of the details. *Id*. Anderson was inexplicably able to recall in her Declaration that Pherigo was emotional and angry. *Decl. Anderson*, ¶ 4. Pherigo disputes that he was emotional and angry on February 3, 2020. *Decl. Pherigo*, ¶ 9. Pherigo disputes Anderson's recovered memory of that day.

6. In her deposition, Anderson stated that she struggled to recall why Pherigo was put on leave. *Decl. Andersen*, **Ex. D**, 81:16-25. At his deposition, Mitton testified that he didn't recall whether or not Pherigo was placed on leave for his report on February 3, 2020. *Id.*, **Ex**. A, 25:18-25. Mitton testified that he and Carol Anderson probably made the decision to place

**STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 20]– Page 2**

Pherigo on leave. *Id.*, **Ex. A**, 26:1-9. Mitton stated that it may have been to calm down the situation. *Id.*, **Ex. A**, 29:13-24. Mitton recalled that someone went with him, but can't recall whether it was Anderson. In his Declaration, Mitton somehow gained memory and recalled that he made the decision to place Pherigo on leave on February 3, 2020. *Decl. Mitton*, ¶ 12. Pherigo's employment status was changed. Pherigo was placed on involuntary leave at a time when he was capable of working even though he was neither the victim nor the accused in the sexual harassment claim. *Decl. Pherigo*, ¶ 10. Pherigo disputes that enforced leave after a harassment report is not an adverse employment action.

7.      Pherigo disputes that the City took the allegation of sexual harassment seriously. The sexual harassment investigation occurred at a time when the both victim and reporter were placed on leave. *Decl. Andersen*, **Ex. A**, 30:24-25; 31:1-14. No effort was made to ensure that employees were questioned outside of the presence of Hodge, who was not placed on leave during the investigation. *Id.*, **Ex. A**, 31:15-24. The City had another qualified individual who could have fulfilled Hodge's duties if Hodge had been placed on leave. *Id.*, **Ex. A**, 31:25; 32:1-6.

8.      The City hired an independent investigator to conduct a sexual harassment investigation. *Decl. Andersen*, **Ex. M**. As noted in his report, the investigator was contacted on February 3, 2020 and told to complete his report by February 10, 2020. *Id.*, Pages 1-2. According to the City Handbook, as reviewed by Anderson in her deposition, the City had fifteen business days in which to conduct an investigation but the City only granted six business days to conduct the investigation. *Id.*, **Ex. D**, 38:4-25; 39:1-10. Carol Anderson admitted at her deposition that she did not consult or review the Employee Handbook when she received the complaint of the sexual harassment. *Id.*, **Ex. D**, 38:4-10.

9.      Hodge and Pherigo never received written copies of the report as required by the

**STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 20]– Page 3**

City's handbook. *Id.*, **Ex. B**, 83:3-25; 84:1-5; *Decl. Pherigo*, ¶ 13. At her deposition, Anderson had no recollection of giving anyone a copy of the report. *Decl. Andersen*, **Ex. D**. 103:9-25.

10.     The report noted allegations about the behavior of Hodge and his treatment of women in the workplace. *Decl. Andersen*, **Ex. M**. These statements included findings that "Dee Hodge can be stern, demeaning, even condescending in his managerial approach to employees." *Id.*, **Ex. M**, Page 5. "Some of Lindsey Yeaman's co-workers thought she was picked on as well." *Id.*, **Ex. M**, Page 7. "Requests for leave, particularly sick leave, are usually accepted without much explanation for male workers, whereas the female workers report that they will have to make more detailed statements of the nature of why they need to use the sick leave, including intimate details that make them uncomfortable." *Id.*, **Ex. M**, Page 9.

11.     When asked about these findings of the report, Anderson of Human Resources and Mitton, the City Administrator, stated that they had taken no action with respect to any of those reports. *Decl. Andersen* **Ex. A**, 74:11-25; 75:1-25; 76:1-25; 78:14-25; 79:1-25; 80:1-25; 81:1-9; **Ex. D** 102:11-25;104:9-25; 105:1-25; 106:1-25; 108:17-25; 109:1-18. In his deposition, Dee Hodge confirmed that he had never seen the report and no one had spoken to him about the concerns raised in the report. Hodge was only told not to bring something like an offensive mug into the office again. *Id.*, **Ex. B**., 87:1-25; 95:12-17.

12.     The City's handbook section on harassment and sexual harassment describes the use of an attached complaint form to submit a complaint for sexual harassment. *Id.*, **Ex. A**, 17:1-6, 23-25; 18:1-20. Mitton is unaware of the existence of any such complaint form. *Id*.

13.     The only action Anderson recalls taking after Lindsey Yeaman came on January 6, 2020 to report harassment by Dee Hodge was to bring in Dee Hodge and Dustin Raney to the office together. *Id.*, **Ex. D**, 30:5-22. No questions were asked of Dustin Raney about Hodge's

**STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 20]– Page 4**

behavior at that time. *Id*., **Ex. D**, 31:1-22. Raney was instructed to temporarily act as Yeaman's supervisor. Hodge went back to Anderson and said "it lowers morale for him to not speak to Lindsey." *Id*., **Ex. D**, 32:24-25; 33:1-4. Anderson did not follow up with Yeaman regarding Yeaman's report on January 6, 2020 and is not sure if anyone did. *Id*., **Ex. D**, 53:19-25; 54:1-5.

14.     Pherigo made statements to his coworkers, but disputes that those statements were threats of violence. *Decl. Pherigo*, ¶ 33. Pherigo did not threaten to kill Dee Hodge. *Decl. Andersen*, **Ex. N**, 72:21-22. At his termination hearing, Pherigo denied making any statements of violence. *Decl. Andersen*, **Ex. O.** He explained at the hearing "I let everyone know that morning, what I was going to do, come to HR, bring Dee [Hodge] up on sexual harassment charges. That part's true." *Id*.

15.     Pherigo disputes that coworker Rusty Blakner provided a consistent allegation that he was surprised to see Pherigo back at work. In his deposition, Blackner testified both that he thought that Pherigo was on leave for grievance, *Decl. Andersen*, **Ex. E**, 17:11-25; 18:1-3; and that he thought that Pherigo had been fired, **Ex. E**, 19:18-20. Pherigo couldn't have been both on leave and terminated during the same time period. And, if Pherigo was on leave, it would not be surprising that Pherigo would return to the office at some point.

16.     Pherigo disputes that the City was not aware of the alleged threats by Pherigo prior to February 18, 2020. *Statement of Material Facts*, ¶ 11. The Memorandum of Investigation prepared by Kerry McMurray and provided to Carol Anderson on February 10, 2020 references allegations. *Decl. Andersen*, **Ex. M**, Page 9.  Dustin Raney's signed statement says that he came to Carol Anderson on February 4, 2020 with Hodge to discuss Pherigo's statements with Mitton and Anderson. *Id.*, **Ex**. **J**. When asked, Anderson wasn't sure that she hadn't gathered employee statements prior to February 18, 2020.  *Id.*, **Ex. D**., 127:18-25; 128: 1-

**STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 20]– Page 5**

25. Mitton recalled Dustin Raney coming in to discuss safety and recalls telling him that Mitton didn't think that the threats were of a physical nature. *Id.*, **Ex. A**. 43:4-25. Mitton does not know why he waited until February 18, 2020 to speak with Pherigo about allegations of threats that were made earlier. *Id.*, **Ex. A**, 53:2-25; 54:1-6.

17.    Regarding the reports of Pherigo and Hodge to Anderson on February 18, 2020, Anderson observed that Hodge was upset. *Decl. Andersen*, **Ex. D**, 117:19-25; 118:1-7. However, only Pherigo was placed on leave on February 18, 2020.

18.    Pherigo disputes that Hodge had no involvement with the Notice of Proposed Disciplinary Action dated February 27, 2020. Pherigo was placed on leave for the first time on February 3, 2020, the same day that he made a report against Hodge for sexual harassment. *Decl. Pherigo*, ¶ 10. Pherigo was later placed on leave a second time on February 18, 2020, the same day that he got into a disagreement with Hodge and reported Hodge again to human resources. *Id.*, ¶ 14-16; ¶ 21-24. Pherigo disputes that this timing is a coincidence. The failure of the City to place Hodge on leave at any time demonstrates Hodge's influence with the City.

19.    At deposition, Hodge reviewed Raney's signed statement which describes a visit with Anderson and Mitton. Hodge believed that the statement, which referred to a February 4, 2020 discussion about Pherigo with Hodge, was accurate.  *Decl. Andersen*, **Ex. B**, 79:1-25; 80:1-8. Earlier on the day of Pherigo's second imposed leave, Hodge had asked Pherigo for his resignation. *Decl. Pherigo*, ¶ 17-18; *Decl. Andersen*, **Ex. L.** Hodge also testified that he asked employees to go up to City Hall and report Pherigo on February 18, 2020. *Decl. Andersen*, **Ex. B**, 70:2-12. This occurred despite the fact that the statements were made earlier, on February 3, 2020. *Id.*, **Ex. B**, 70:13-25; 72:2-18; 79:15-25; 80:1-8. Hodge recalls asking Dustin Raney to make a statement and give it to Carol Anderson on February 18, 2020. *Id.*, **Ex. B**, 77:19-23.

**STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 20]– Page 6**

20.    Pherigo disputes that all city employees are subject to the policies and procedures contained in the City's handbook. *Decl. Mitton*, ¶ 5. Page 32 of the Handbook states that "Discourteous treatment of the public or other employees" is not allowed. *Decl. Andersen*, **Ex. A**, 10:2-15. At his deposition, Mitton testified that Hodge probably engaged in discourteous treatment of the public or other employees. *Id*. Hodge was never disciplined for discourteous behavior. Hodge faced no discipline even after the report of McMurray that found that Hodge could be "stern, demeaning, even condescending in his managerial approach to employees." *Id.*, **Ex. M**, Page 5. The City took no action when its independent investigator reported that Hodge asked intimate details of why women were requesting sick leave. *Id.,* **Ex. A**, 79:8-25; 80:1-12; **Ex. D**., 106:2-25. The City did not follow its own procedure for handling harassment and sexual harassment claims when Hodge was the accused. The employee handbook was not enforced against Hodge. *Id*., **Ex. A**, 10:2-15.

21.    Pherigo disputes that the reason stated in the Proposed Notice of Termination given to him was the actual reason why he was fired. It was a pretext.

22.    The only coworker to allege an overt threat of violence was Rusty Blackner. He alleged that Pherigo stated that Pherigo would kill Hodge. *Decl. Andersen*, **Ex. K**. This allegation was not credible. In Blackner's statement signed on February 18, 2020, Blackner asserted that the threat to kill was made on February 3, 2020. Raney's statement clarifies that Raney spoke with Blackner regarding Pherigo that same day and that they had heard the same thing. Raney brought those concerns to Anderson and Mitton on February 4, 2020. *Decl. Andersen*, **Ex. J**. It is implausible that on February 3, Blackner would forget to mention the alleged death threat of Pherigo or that Raney would forget to relay a death threat to Anderson and Mitton when he spoke to them the next day. The death threat amazingly surfaced on the

**STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 20]– Page 7**

same day that Hodge had a disagreement with Pherigo, February 18, 2020.

23.    Blackner claims to have taken the alleged death threat on February 3, 2020 seriously. *Id.*, **Ex. E**, 17:1-10; 19:1-25. Yet, he made no signed statement about it until February 18, 2020. *Id.*, **Ex. K**. Blackner never called the police regarding the alleged threat. *Id.*, **Ex. E**, 38:9-16. Inexplicably, Blackner said that once Pherigo left the workplace he was no longer concerned that Pherigo would carry out the threat. *Id.*

24.    Blackner lacks credibility. He lied on his employment application about completing high school, which was a requirement of his job. *Id.*, **Ex. E**, 47:8-23. He threatened to beat a coworker to death with a shovel and only received a written reprimand. *Decl. Pherigo*, ¶ 36; *Decl. Andersen*, **Ex. B**, 49:3-23. Blackner's niece was hired by Hodge. *Decl. Andersen*, **Ex. E**, 27:2-13. Blackner contradicted himself about Pherigo's first leave saying that it was for a grievance and then later saying that he thought Pherigo had been terminated. *Id*., **Ex. E**. 17:16-25; 18:1-3, 19:10-20.

25.    Pherigo disputes that he did not give any reasons at the hearing on March 5, 2020 for not terminating his employment. Pherigo was facing termination purportedly for making threats of violence. *Id.*, **Ex. O**.  Pherigo denied making those threats. Pherigo contested the only grounds provided to him for his termination. Pherigo also made it clear that he believed that Hodge had arranged for his termination during Pherigo's involuntary leave. *Id.*

26.    Pherigo disputes that no demand was made for his personal property. Pherigo did not personally return to the City due to the criminal trespass order against him. *Decl. Pherigo*, ¶ 30. Pherigo did inform the City, through counsel, that the City had possession of his personal property. In his Notice of Tort Claim, received on May 6, 2020, and his claim before the Idaho Human Rights Commission, which was received by the City, Pherigo stated that he had personal

**STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 20]– Page 8**

belongings on the City premises that he was unable to retrieve. *Decl. Andersen*, **Ex. G**, **Ex. H**.

27.     Pherigo was not given any prior notice of his involuntary leave on February 18, 2020. He was escorted off the premises with Mitton and an officer without an opportunity to retrieve his property and the threat of trespass if he returned. *Decl. Pherigo*, ¶ 24-25.

28.     Pherigo considered himself unable to return to the City to retrieve his property after his trespass warning. *Decl. Pherigo*, ¶ 25. He had previously been incarcerated in connection with a violation of the City's weed ordinance for the presence of Japanese knotweed in his yard and took the trespassing notice seriously. *Id*., ¶ 26-29.

29.     Pherigo disputes that Carol Anderson, director of Human Resources for the City, is familiar with the City processes for hiring, firing, and other employment issues including employee discipline. *Decl. Anderson*, ¶ 3. Anderson received a report from Lindsey Yeaman of harassment and other behavior by Dee Hodge on January 6, 2020. *Decl. Andersen*, **Ex. D**., 23:14-19. Despite the City policy of taking a written report for harassment claims, Anderson does not recall asking Yeaman to write anything down. *Id*., **Ex. D**, 23:23-25; 24:1-2. At deposition when Anderson reviewed her notes of that day, she recalled that Yeaman's complaint included a statement that Hodge criticized Yeaman's use of sick time to care for her disabled son. *Id*., **Ex. D**, 28:6-13. Anderson also recalled that Yeaman reported that Yeaman wanted Hodge's harassment of her to stop. *Id*., **Ex. D**, 28:14-20. The City's employment policy for harassment covers both harassment and sexual harassment. *Id*., **Ex. D**, 28:21-24.

30.     When questioned as to whether the handbook required a complaint about harassment or sexual harassment to be in writing, Anderson answered "Not necessarily." *Id.* **Ex. D**, 36:3-11. Anderson stated that after Yeaman came in and made her complaint, Anderson did not go back and consult the policy. *Id.*, **Ex. D**, 36:10-16.  At her deposition, and after a review of

**STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 20]– Page 9**

the handbook, Anderson stated that she had not been aware of the policy that a complaint be in writing, but she acknowledged that the requirement was there. *Id*., **Ex. D**, 37:3-19.

31.     Anderson was still not familiar with the process required by the handbook for harassment when Pherigo came into her office on February 3, 2020 to report the sexual harassment of Yeaman by Hodge. *Decl. Andersen*, **Ex. D**., 38:4-10. When asked if she consulted the handbook when Pherigo made his complaint she answered, "Quite honestly, --no, I did not." *Id*.

32.     The investigator of Pherigo's complaint was given a short time period for his investigation. In his report, the investigator mentioned how that time frame had affected his investigation, which was requested on February 3, 2020. *Decl. Andersen*, **Ex. M**, Pages 1- 2. "It should be noted for purposes of this investigation, and to meet the urgency of the City needing to have the investigation completed by Monday, February 10, 2020, that some factual disclosures came in late last week. Due to the short term of the investigation, there was no time to re-interview Dee Hodge about some of those allegations." *Id*. The investigator was given only six business days to complete his investigation, as February 3, 2020 is a Monday and the report was due on the following Monday, February 10, 2020. The handbook allows fifteen (15) business days for an investigation. *Decl. Andersen*, **Ex. D**, 38:11-25; 39:1-10. This would have given the investigator until February 21, 2020 to complete his investigation. Despite the requirement in the handbook, Yeaman, Hodge, and Pherigo were never given written copies of the findings.

33.     Anderson's lack of knowledge about city policies, including harassment, and her failure to review the handbook when those policies became highly relevant, demonstrate that she was not familiar with city employment policies and had no intention of enforcing said policies against Hodge.

**STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 20]– Page 10**

DATED this 30th day of November, 2022

By /s/ *Kelly H. Andersen* _____
Kelly H. Andersen

**STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 20]– Page 11**

**CERTIFICATE OF SERVICE**

I hereby certify that I served a true and correct copy of the foregoing document upon the following this 30th day of November, 2022, by the method indicated below:


Blake G. Hall                                    [X] CM/ECF
Sam L. Angell
Dillon S. Erickson
Hall Angell & Associates, LLP
1075 S. Utah Avenue, Suite 150
Idaho Falls, Idaho 83402
Email:
bgh@hasattorneys.com
sla@hasattorneys.com
dse@hasattorneys.com


                                    /s/ Kelly H. Andersen_____
                                    Kelly H. Andersen