UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OTTIS D. PHERIGO,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF BURLEY,<br><br>    Defendant. | Case No. 4:21-cv-00364-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant City of Burley's Motion for Summary Judgment. Dkt. 20. The Court held a hearing on the Motion on March 20, 2023, and took it under advisement. For the reasons stated below, the City's Motion for Summary Judgment is GRANTED in PART and DENIED in PART.

## II. BACKGROUND

This case presents the Court with two stark versions of facts. Both end with the City placing Plaintiff Ottis D. Pherigo on administrative leave and ultimately terminating him from the Wastewater Department. Pherigo maintains that the City retaliated against him for reporting his supervisor, Dee Hodge, for allegedly sexually harassing his coworker. The City, on the other hand, claims that it terminated Pherigo after learning he threatened to cause bodily harm and kill Hodge.

The timeline of this case is closely linked with the discipline and termination of Pherigo's coworker and friend, Lindsey Yeaman, as well as with Yeaman's own report of sexual harassment against Hodge. Around January 6, 2020, Yeaman told Pherigo that she

was on her way to report Hodge for harassment. After learning this, Pherigo drove her to City Hall and sat in the meeting where she reported Hodge's alleged harassment to Carol Anderson in human resources. At that time, Pherigo told Anderson that he had also witnessed Hodge's hostile behavior toward Yeaman.

After the meeting, Pherigo learned that, in addition to harassing her, Hodge had also allegedly made sexual advances toward Yeaman, so, on February 3, 2020, Pherigo returned to Anderson to report what he had learned. Later that day, Anderson placed Pherigo on paid administrative leave pending an investigation of Hodge's harassment of Yeaman. Pherigo viewed being placed on leave as an adverse employment action, while the City claims it put Pherigo on leave to help return the workplace to normal due to upheaval surrounding the Yeaman situation. Prior to being placed on leave, Pherigo had never received a negative employee review, nor had he been written up for poor performance or for violating City policies.

Though the narrative is not entirely clear, there is some evidence that on February 3, 2020, Pherigo's coworkers verbally complained that Pherigo had made threats against Hodge. On February 4, 2020, it appears that one coworker went with Hodge and told Mark Mitton, the City Administrator, about Pherigo's alleged threats. At that time, Mitton did not deem Pherigo's statements as being of a physical nature.

Before the sexual harassment investigation was complete, City employees learned that Yeaman had been terminated and that Pherigo had been placed on leave. Pherigo believes these actions chilled other employees from speaking out against Hodge and also tainted the City's investigation into Hodge's harassment. About a week later, on February

10, 2020, Mitton informed Pherigo that an investigation determined Hodge did not sexually harass Yeaman. Mitton instructed Pherigo to return to work. Pherigo argues that the City failed to follow its policies when investigating Hodge.

When Pherigo returned to work on February 18, 2020, as instructed, he informed Hodge that he had an appointment for his rheumatoid arthritis and needed to leave early for lunch. According to Pherigo, Hodge accused him of being drunk and tampering with work systems. Pherigo defended himself and again accused Hodge of harassing Yeaman. He contends that Hodge told him that he accepted resignations any day of the week.

After this incident, both men went to Anderson to report the encounter. Anderson noted the similarities between their accounts, and Pherigo told her that he would record future conversations with Hodge, go to the Idaho Labor Board for help, and get a lawyer involved. Pherigo then went to his appointment.

While he was gone, Pherigo alleges that Hodge told employees to go to City Hall and file written reports regarding the threats of violence Pherigo had allegedly made on February 3, 2020. Pherigo disputes that he ever threatened physical violence and argues that the timing of the written statements is circumstantial evidence of the City's retaliation. Regardless, after written reports were formally submitted on February 18, 2020, the die was cast. When Pherigo returned to work after his appointment, Mitton and an officer escorted him off the premises and told him that he would be cited for criminal trespass if he returned.

Eventually, after receiving a notice, Pherigo was terminated. After filing a charge of discrimination and retaliation with the Idaho Human Rights Commission and sending

MEMORANDUM DECISION AND ORDER - 3

the City a Notice of Tort Claim, Pherigo filed the present suit on September 13, 2021. Pherigo brings claims for conversion and for retaliation and discrimination under Title VII, the Americans with Disabilities Act, and the Idaho state counterparts to both statutes. The City filed its Motion for Summary Judgment on November 9, 2022.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, the Court must "view[ ] the facts in the non-moving party's favor." *Id*. To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id*. (citation omitted).

Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

MEMORANDUM DECISION AND ORDER - 4

# IV. ANALYSIS

The City seeks summary judgment on each of Pherigo's six claims. The Court addresses each in turn.

**A. Title VII Retaliation**

"To make out a prima facie case of retaliation, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (cleaned up). If the employee satisfies each element, "the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision." *Id.* (cleaned up). "If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." *Id.* (cleaned up).

Here, the parties do not contest that Pherigo participated in protected activity when he reported Hodge, so the Court need not address the first element. The other two elements remain in play.

*1. Adverse Employment Action*

An employment action is adverse if it is "reasonably likely to deter employees from engaging in protected activity." *Id.* at 1243. It goes without saying that termination is an adverse employment action. So, as far as Pherigo's termination goes, he successfully satisfies this prong. The parties do not dispute this. Instead, their disagreement is about whether paid administrative leave is an adverse employment action.

The Ninth Circuit has held that, "under some circumstances, placement on

administrative leave can constitute an adverse employment action." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1078 (9th Cir. 2013).[1] Still, it has not directly addressed whether *paid* administrative leave, with no reduction of benefits, is an adverse action. Pherigo cites *Dahlia* and *Whitehall v. County of San Bernadino*, 17 Cal. App. 5th 352 (2017),[2] to assert that forced administrative leave can be an adverse employment decision. The City points to *Parker v. United Airlines, Inc.*, 2021 WL 3206777, at *5 (D. Utah June 28, 2021), *aff'd*, 49 F.4th 1331 (10th Cir. 2022), to argue that placing Pherigo on paid administrative leave did not constitute materially advise action.

For the most part, the present case is distinct from *Dahlia*. In that case, the employee was placed on paid administrative leave, as was Pherigo. But, unlike Pherigo, the *Dahlia* plaintiff alleged that he was barred from taking a promotional exam, required to forfeit on-call and holiday pay, and prevented from receiving investigative experience while on forced leave. *Dahlia*, 735 F.3d at 1079. The court found that it was reasonably likely that these penalties, beyond the general stigma resulting from placement on administrative leave, would deter employees from engaging in protected activity. *See id.* Here, Pherigo has not identified a single missed opportunity or cumulative adverse effects he personally suffered As a result of being placed on leave.

Still, Pherigo does allege that his administrative leave "hampered the investigation

---

[1] This decision was under the First Amendment, and not Title VII. That said, the Ninth Circuit often looks to Title VII retaliation caselaw in First Amendment retaliation cases. *See, e.g.*, *Dahlia v. Rodriguez*, 735 F.3d 1060, 1079 (9th Cir. 2013).

[2] The Court does not find *Whitehall* to be relevant, especially because it is a California state case addressing California statutes and caselaw. Although it might have some analog to the federal and Idaho statutes at play here, the Court will not look to *Whitehall* for guidance.

MEMORANDUM DECISION AND ORDER - 6

into Hodge's conduct, had a chilling effect on his coworkers, and strengthened the perception of his coworkers that any complaints about Hodge's behavior could result in forced leave or termination." Dkt. 21, at 9. If these inferences are supported by evidence, then Pherigo's administrative leave is likely to constitute an adverse employment action.

Under the totality of the circumstances, placing Pherigo on paid administrative leave might have reasonably deterred employees from engaging in protected activity. *Ray*, 217 F.3d at 1243. The standard does not require the employment decision to adversely affect Pherigo alone. As Pherigo persuasively points out, having just seen Yeaman and Pherigo be placed on administrative after reporting Hodge, it is reasonable to infer that other employees were chilled from providing candid reports on Hodge's behavior when asked. Dkt. 21, at 7. So, while most of *Dahlia*'s facts are distinguishable, its holding is persuasive in this case.

*Parker* is persuasive, to an extent. 2021 WL 3206777, at *5. There, an employee was placed on paid administrative leave with full benefits during an investigation into her conduct. The *Parker* court found that, "under this circumstance, a reasonable employee could not find suspension materially adverse when [the plaintiff] suffered no loss of pay or benefits during the suspension period." *Id.* The Court agrees that without any additional harm arising from suspension with pay and benefits, a reasonable employee could not find such action to be materially adverse. But, unlike the *Parker* plaintiff, Pherigo was not the subject of an investigation, so he suggests that *Parker* is distinguishable.

Ultimately, the Court finds that "placing an employee on paid administrative leave does not, in and of itself, constitute a materially adverse action for purposes of a Title VII

MEMORANDUM DECISION AND ORDER - 7

retaliation claim." *Hornsby v. Watt*, 217 F. Supp. 3d 58, 66 (D.D.C. 2016), *aff'd*, 2017 WL 11687516 (D.C. Cir. Nov. 14, 2017). But, because a reasonable juror could draw the inference that other employees were chilled in providing candid information about Hodge, the Court finds that, in this instance, Pherigo's paid administrative leave was an adverse employment action under Title VII. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (concluding that adverse actions are those that "could well dissuade a reasonable worker from making or supporting a charge of discrimination").

*2. Causal Link*

The focal point of this dispute is the third prong—whether a causal link exists between the protected activity and the adverse action. The Court has already determined that terminating Pherigo was an adverse employment action. But that alone is not enough. To make a prima facie case, Pherigo must show that his termination was causally linked to him reporting Hodge for alleged sexual harassment. The same goes for Pherigo's paid administrative leave.

To establish causation, "an employee must prove that her protected activity was a 'but for' cause of the adverse employment action." *Kinchen v. DeJoy*, 2021 WL 3204020, at *1 (9th Cir. July 28, 2021) (citing *Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 362 (2013)). One way this can be done is through circumstantial evidence. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)).

A causal link can be established when "each action was implemented close on the heels of [a plaintiff's] complaints." *Ray*, 217 F.3d at 1244. "That an employer's actions were caused by an employee's engagement in protected activities may be inferred from

MEMORANDUM DECISION AND ORDER - 8

'proximity in time between the protected action and the allegedly retaliatory employment decision.'" *Id.* (citing *Yartzoff*, 809 F.2d at 1376). In this area, the Ninth Circuit has rejected "any bright-line rule about the timing of retaliation." *Coszalter v. City of Salem*, 320 F.3d 968, 978 (2003). Instead, "[w]hether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances." *Id*. But, "[i]f a plaintiff relies solely on the proximity in time inference to support the causation prong, that proximity in time must be 'very close.'" *Williams v. Tucson Unified Sch. Dist.*, 316 F. App'x 563, 564 (9th Cir. 2008) (citing *Clark County School Dist. V. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam)).

Pherigo was placed on paid administrative leave the same day he reported Hodge and was terminated a few weeks later. Given this close proximity, the Court finds Pherigo has established a causal link between his protected activity and his termination. *See, e.g.*, *Williams*, 316 F. App'x at 564 (collecting cases). Likewise, the Court finds, assuming placing Pherigo on paid administrative leave was an adverse employment action, a causal link between his protected activity and placement on leave.

### 3. Legitimate Nondiscriminatory Reasons

With Pherigo having established a prima facie Title VII retaliation case against the City, the burden shifts, so the City must articulate a legitimate nondiscriminatory reason for its decisions. *Ray*, 217 F.3d at 1240.

As to the paid administrative leave, the City alleges that Pherigo was placed on administrative leave, on April 3, 2020, to assuage the upheaval in the Wastewater Department related to Yeaman and to return the workplace to normal. Dkt. 20-1, at 7. When

Pherigo reported Hodge's alleged sexual harassment on February 3, 2020, Anderson observed that Pherigo was upset and emotional, and she purportedly placed him on paid leave to calm the situation down. *Id.* The City provides no further justification for its decision to place Pherigo on leave.

Considering that the only reason that Pherigo was placed on leave was because he was upset by Hodge's behavior towards Yeaman—which he alleged at the time was unlawful—it seems that Pherigo was placed on leave solely because of his report. Based on the record, other employees were also upset by the Yeaman situation, and the whole department was in upheaval after Yeaman's firing. Dkt. 21-3, at 15–17 (Mitton's deposition). As such, it appears that Pherigo's reaction to Hodge's alleged harassment was no different from that of his coworkers. Yet, Pherigo was placed on leave while his coworkers were not. Thus, it appears that Pherigo was placed on administrative leave for reporting Hodge's harassment, and not because he was upset by Yeaman's firing.

This conclusion is more pronounced when considering that Pherigo was the only person, other than Yeaman, who reported Hodge. Moreover, Pherigo was placed on involuntary leave at a time when he was capable of working and was neither the victim nor the accused in the sexual harassment claim. A question arises as to why Pherigo, and not Hodge, was placed on administrative leave. What's more, Ninth Circuit caselaw suggests that legitimate nondiscriminatory reasons are usually typical business decisions, such as reductions in work volume, performance issues, and so forth. *See, e.g.*, *Manatt v. Bank of Am., NA*, 339 F.3d 792, 801 (9th Cir. 2003). The City has not identified *any* business or performance related reason for placing Pherigo on leave, and its reason for doing so is

suspect given that Hodge was not placed on leave. In short, the City has not produced evidence of a legitimate and non-retaliatory reason for placing Pherigo on leave.

By contrast, the City has proffered legitimate and nondiscriminatory reasons for terminating[3] Pherigo. In the notice provided to Pherigo about his termination, the City stated that three employees complained that Pherigo had caused them to fear that Pherigo was threatening violence at the workplace against Hodge. Dkt. 20-1, at 5. Because the City has provided legitimate nondiscriminatory reasons, at least for the termination, Pherigo must provide evidence that his termination was pretextual.

*4. Pretext*

To avoid summary judgment, Pherigo bears the burden of introducing direct or specific and substantial circumstantial evidence of pretext. *Manatt*, 339 F.3d at 801 (9th Cir. 2003).

Here, as referenced above, Pherigo's framing of the sequence of events sufficiently shows enough pretext to avoid summary judgment. In other words, Pherigo has established a genuine dispute of material fact as to whether the City's reasons were pretext for retaliation. Though not entirely clear in the record, but viewing it in the light most favorable to Pherigo, it seems that his three coworkers' statements that the City relied on were formally prepared *after* the incident with Hodge the day Pherigo came back from administrative leave.[4] What's more, it also seems like they were prepared at the direction

---

[3] This also includes a second time Pherigo was placed on administrative leave on February 18, 2020, which was directly tied to his subsequent termination.

[4] Some evidence suggests that, to some extent, the initial reports were provided on February 3, 2020, but it is unclear if these were written statements.

of Hodge. *See* Dkt. 21, at 10–16. Given this timing, and that Pherigo, under penalty of perjury, said that he never threatened physical violence, it is not proper for the Court to grant summary judgment. *See Vasquez v. City of Idaho Falls*, 778 F. App'x 415, 418 (9th Cir. 2019) (finding that conflicting evidence undermined defendant's non-retaliatory reasons). Further, Pherigo provides additional evidence to suggest that the City failed to follow regular procedures during the investigation of Hodge, and, as noted that Mitton initially concluded Pherigo's February 3, 2020 statements did not threaten physical violence.[5] *See* Dkt. 21, at 6, 10–16.

This, in addition to Pherigo's assertion that he was threatening to report and sue Hodge and the City, suggests the City's reason for terminating Pherigo was pretextual. As such, the Court is precluded from granting summary judgment and taking these factual questions from the jury.

### B. Americans with Disabilities Act ("ADA")

The ADA generally prohibits discrimination on the basis of an individual's disability. To state a prima facie case of employment discrimination under the ADA, a plaintiff must show: (1) that he is disabled within the meaning of the ADA; (2) that he is a qualified individual with a disability; and (3) that he was discriminated against because of his disability. *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (cleaned up).

---

[5] It appears that Rusty Blackner's February 18, 2020 statement was the first time anyone said anything about Pherigo allegedly wanting to kill Hodge. Dkt. 21-3, at 124.

Here, as for the first two prongs, Pherigo has met his burden, and the City does not seem to contest this. First, Pherigo has severe rheumatoid arthritis ("RA"), which has been found by many courts to fall "within the definition of impairment in the regulations." *See, e.g.*, *Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 951 n.3 (7th Cir. 2000) (finding that "[b]ecause rheumatoid arthritis is a physiological condition that affects the musculoskeletal system, it clearly qualifies as an impairment."). Second, before his termination, Pherigo performed the essential functions of his position, with and without reasonable accommodation. *See Smith*, 727 F.3d at 955 (defining the second prong—a qualified individual with a disability); Dkt. 21-2, at 9.

The parties dispute the third prong—whether Pherigo was discriminated against because of his disability.[6] To establish causation, an employee "must show that the adverse employment action would not have occurred but for the disability." *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019). "Courts have found a lack of but-for causation when the employer shows that it would have terminated the plaintiff-employee regardless of the disability." *Acio v. Kyo-ya Ohana, LLC*, 2022 WL 1137157, at *10 (D. Haw. Apr. 18, 2022) (collecting cases).

Under the Ninth Circuit's "but for" test, Pherigo fails. Although the February 18 incident about his doctor appointment likely played a role in him being placed on leave and terminated, in his own words, it only "in part led to his termination." In other words, it falls

---

[6] The parties also dispute whether Pherigo's ADA claim is time-barred. Because Pherigo fails to establish a genuine issue of material fact with respect to his ADA claim, the Court does not further address the City's argument that Pherigo's claim is time-barred.

short of being *the* but for cause of the alleged discrimination under the ADA. While Title VII only requires *a* but for cause, Ninth Circuit caselaw requires that the disability be *the* but for cause under the ADA. *Compare Kinchen*, 2021 WL 3204020, at *1 (Title VII causation), *with Murray*, 934 F.3d at 1105 (ADA causation) (holding that a plaintiff bringing a claim under the ADA "must show that the adverse employment action would not have occurred but for the disability.").

In reaching its decision, the *Murray* court relied on Supreme Court cases about other civil rights statutes with language similar to the ADA. *See Murray*, 934 F.3d at 1105–06 (collecting cases). In one of those cases, the Supreme Court held that a similar civil rights statute "did not permit mixed-motive claims," unlike Title VII. *Id.* at 1106 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009)). The Circuit likewise applied the same logic to the ADA. *See id.* at 1107.

Because Pherigo's disability was not the but for cause for his firing, he has not made out a prima facie ADA discrimination claim under Ninth Circuit caselaw, so the Court grants summary judgment on this claim.

**C. Idaho Human Rights Act Claim ("IHRA") – Idaho Code section 67-5902**

The analysis of Pherigo's Idaho Human Rights Act claim "is identical in all respects to the analysis of his Title VII claim." *Kamdem-Ouaffo v. Idahoan Foods*, LLC, 243 F. Supp. 3d 1130, 1141 (D. Idaho 2017); *Mackay v. Four Rivers Packing Co.*, 179 P.3d 1064, 1069 (Idaho 2008) ("The purpose of the IHRA is to provide for execution within the state of the policies embodied in the federal Civil Rights Act of 1964, as amended."). Therefore, if summary judgment is appropriate on the Title VII claim, then summary judgment is also

appropriate on the IHRA claim. *Kamdem-Ouaffo*, 243 F. Supp. 3d at 1141. Reversing this logic, because summary judgment is inappropriate on Pherigo's Title VII claim, summary judgment is also inappropriate on the IHRA claim.

### D. Conversion

Pherigo alleges that he was prevented from collecting his personal belongings when he was terminated and that the City has converted his property. Under Idaho Law, "a claim of conversion requires proof of three elements: (1) that the charged party wrongfully gained dominion of property; (2) that property is owned or possessed by plaintiff at the time of possession; and (3) the property in question is personal property." *Clark v. Jones Gledhill Fuhrman Gourley, P.A.*, 409 P.3d 795, 803 (Idaho 2017) (cleaned up). Conversion requires "a distinct act of dominion wrongfully exerted over another's personal property or the intentional exercise of dominion" over another's personal property. *Gissel v. State*, P.2d 1153, 1155 (Idaho 1986) (cleaned up).

"Conversion cannot originate in the exercise of a legal right." *Peasley Transfer & Storage Co. v. Smith*, 979 P.2d 605, 616–17 (Idaho 1999) (cleaned up). Thus, conversion does not exist "if the possession of property was not acquired by a tortious taking," or if "the possessor does not appropriate or use the property in a fashion" contrary to the owner's interest, unless "a proper demand for possession was made by the one who is entitled thereto and the possessor wrongfully refused delivery." *Id.* (cleaned up). Because the City did not acquire Pherigo's property through a tortious taking, and there is no evidence it has appropriated or used his property against his interests, to prevail on his conversion claim, Pherigo must have made a proper demand.

MEMORANDUM DECISION AND ORDER - 15

The City maintains that Pherigo never made a proper demand for the City to return his belongings. The City argues that Pherigo needed to personally request that his property be returned and, because he did not, his conversion claim fails. Pherigo argues that this was not feasible because he did not know who to contact and that, even if he did, he was worried he would be cited for criminal trespass. This is because, when he was escorted off of City property, Pherigo was not allowed to retrieve his property and was told not to return. Moreover, Pherigo argues that he did make a demand for the return of his property through his counsel in the Notice of Tort Claim he filed with the City and in the paperwork submitted to the Idaho Human Rights Commission and forwarded to the City.

The Court finds that Pherigo's Notice of Tort Claim and the paperwork he filed for the Commission are not proper demands for the return of his property as required under Idaho law. *See, e.g.*, *Sloan v. Gillingham*, 2011 WL 11037658, at *6–7 (Idaho Ct. App. July 7, 2011) (finding demands via attorney were insufficient). There is also no evidence in the record that the City refused to return his property. *See Peasley*, 979 P.2d at 617 (cleaned up) (requiring that the possessor wrongfully refuse delivery after receiving a proper demand).

For these reasons, the Court grants summary judgment on Pherigo's conversion claim.

## V. CONCLUSION

While the Court finds that summary judgment is appropriate for Pherigo's ADA and conversion claims, there are genuine disputes of material fact that preclude summary judgment on his Title VII and IHRA claims. To do otherwise would usurp the jury's fact-

finding role. This is especially true given the parties' conflicting timelines and conflicting evidence. "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56 advisory committee's note to the 1963 amendment.

## VI. ORDER

The Court HEREBY ORDERS:

1. Defendant City of Burley's Motion for Summary Judgment (Dkt. 20) is GRANTED in PART and DENIED in PART. The Motion is GRANTED with respect to Pherigo's conversion claim and federal and state ADA claims. The Motion is DENIED with respect to Pherigo's federal and state retaliation claims;

2. Within fourteen days of the date of this Order, the parties shall submit their unavailable trial dates starting in August 2023. The Court will then enter a separate Trial Order that sets forth the trial date and pretrial deadlines.

DATED: May 3, 2023

_____
David C. Nye
Chief U.S. District Court Judge

finding role. This is especially true given the parties' conflicting timelines and conflicting evidence. "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56 advisory committee's note to the 1963 amendment.

## VI. ORDER

The Court HEREBY ORDERS:

1. Defendant City of Burley's Motion for Summary Judgment (Dkt. 20) is GRANTED in PART and DENIED in PART. The Motion is GRANTED with respect to Pherigo's conversion claim and federal and state ADA claims. The Motion is DENIED with respect to Pherigo's federal and state retaliation claims;

2. Within fourteen days of the date of this Order, the parties shall submit their unavailable trial dates starting in August 2023. The Court will then enter a separate Trial Order that sets forth the trial date and pretrial deadlines.

DATED: May 3, 2023

_____
David C. Nye
Chief U.S. District Court Judge